**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMANDA LANDWEHRLE<br><br>        Plaintiff,<br><br>    v.<br><br>PATRIOTS' PATH COUNCIL and MARC ANDREO,<br><br>        Defendants. | Civil Action No.: 24-9620<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendant Patriots' Path Council and defendant Marc Andreo's ("Council" and "Andreo," and collectively, "Defendants") motion to dismiss (ECF No. 9; *see also* ECF No. 9-1, "Br.") plaintiff Amanda Landwehrle's ("Plaintiff") First Amended Complaint (ECF No. 7, "FAC"). Plaintiff filed an opposition (ECF No. 17, "Opp."), and Defendants replied (ECF No. 18, "Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

I.    **BACKGROUND**[1]

The Council is an New Jersey-based affiliate of the Boy Scouts of America ("BSA"). FAC ¶ 11. Plaintiff worked for a camp operated by the Council for nineteen years. *Id.* ¶ 19. She first served for approximately ten years as Aquatics Director. *Id.* ¶ 20. In the Summer of 2015, she became the "Trailblazer Director" in charge of the boy scout day camp. *Id.* ¶ 21. She held that position until 2020, when she was promoted to "Camp Director." *Id.* ¶ 22.

---

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

Plaintiff's responsibilities as Camp Director included reviewing staff applications, managing the camp budget, and ordering supplies. *Id.* ¶ 23. Initially, she reported to an individual named Keith Dlugosz but began reporting directly to "Scout Executive" Andreo in or about March 2023. *Id.* ¶¶ 24–25. Plaintiff alleges that before Andreo became her direct supervisor, Andreo gave her positive performance feedback and she received only positive performance feedback from others. *Id.* ¶ 26. She also asserts that she was "amply qualified" to be Camp Director as evidenced by the BSA's evaluation of the camp and by her success at managing the budget. *Id.* ¶ 27.

After Plaintiff began reporting directly to Andreo in the Summer of 2023, she alleges that many of the men she had previously worked well with became difficult or distant. *Id.* ¶ 28. She also started to feel that Andreo disapproved of Plaintiff being Camp Director because she was a woman. *Id.* ¶ 29. At one point, Andreo told Plaintiff that she was overpaid. *Id.* ¶ 30. Plaintiff also felt that, unlike with Plaintiff's male predecessor, Andreo questioned many of Plaintiff's decisions. *Id.* ¶¶ 31–32. Eventually, Plaintiff asked Andreo and his deputy Jason Dugan ("Dugan") if they thought she was competent for the position, and both agreed that she was. *Id.* ¶¶ 33–34. Despite this confirmation, Plaintiff asserts that Andreo and Dugan would default to speaking with her male program director, James, rather than her. *Id.* ¶ 35. Other male employees and volunteers would also ignore Plaintiff or walk past her to talk to James. *Id.* ¶ 36. Additionally, upper management asked questions of James that Plaintiff could have answered. *Id.*

At another point during Summer 2023, Plaintiff protested that the tight polyester shirts employees were provided to wear on Wednesdays had "the unfortunate effect of enhancing and emphasizing breasts." *Id.* ¶¶ 38–39. She expressed that she and other female employees were not comfortable wearing this shirt and stated that she would wear it if it were made from regular t-shirt material. *Id.* ¶ 40. As an alternative, Plaintiff had new shirts made in less revealing material. *Id.*

2

¶ 41.  While waiting for the new shirts to be delivered, however, camp management kept pushing Plaintiff to wear the shirt and required other staff to do so.  *Id.*  In a meeting with Plaintiff, Dugan stated that he had been at another camp location where staff wore the same shirt and "didn't see any nipples."  *Id.* ¶ 42.

Several months after the end of the camp season in 2023, Andreo texted Plaintiff to schedule a meeting.  *Id.* ¶ 43.  Plaintiff asked what the meeting related to, to which Andreo replied that they would be discussing the camp's "direction" for next year.  *Id.* ¶ 44.  At the meeting, Andreo informed Plaintiff that she was no longer needed as Camp Director for the 2024 season.  *Id.* ¶ 46.  When Plaintiff asked why she was being terminated, Andreo responded that "[w]e are going in a different direction."  *Id.* ¶ 47.  Plaintiff then asked why she was not a part of the new direction and if she had done something wrong.  *Id.* ¶ 48.  Andreo replied: "No, it's just that we really want to head in a different direction."  *Id.* ¶ 49.  Plaintiff responded and questioned whether she was being terminated because she was a woman.  *Id.* ¶ 50.  Andreo appeared visibly uncomfortable and did not respond directly to the question, offering only that there were "several 'non-negotiables' about Plaintiff."  *Id.* ¶¶ 51–52.

Plaintiff subsequently learned that Andreo had offered the Camp Director position to her male subordinate James.  *Id.* ¶ 53.  After James refused the position, Defendants hired another male, who Plaintiff alleges was previously a Camp Ranger with little scouting experience.  *Id.* ¶ 55.  She also asserts that another Council executive, when asked by a staff member why Plaintiff had been fired, said "you know how difficult she can be."  *Id.* ¶ 54.

Plaintiff brings four claims in her FAC: (1) sex discrimination under Title VII of the Civil Rights Act ("Title VII") against the Council, *id.* ¶¶ 57–60; (2) sex discrimination under the New Jersey Law Against Discrimination ("NJLAD") against all Defendants, *id.* ¶¶ 61–64; (3) retaliation

3

in violation of Title VII against the Council, *id.* ¶¶ 65–68; and (4) retaliation in violation of the NJLAD against all Defendants. *Id.* ¶¶ 69–72.[2]  Defendants move to dismiss all counts for failure to state a claim.[3]

## II.   LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted).  In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

---

[2] Prior to filing her initial complaint in this matter, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 7.  On July 8, 2024, the EEOC issued her a Notice of Right to Sue, *id.*, which gave her the right to proceed with her claims in federal court. *See Doe v. TRX Ins. Servs.*, No. 20-2095, 2021 WL 1566050, at *1 (E.D. Pa. Apr. 21, 2021).

[3] Plaintiff's responsive brief contends that "Defendants do not argue that Plaintiff fails to state a hostile work environment claim based on gender." Opp. at 12.  As Defendants correctly point out, Plaintiff did not include a cause of action for hostile work environment in her FAC.  Reply at 2. A plaintiff cannot amend her complaint in an opposition brief on a motion to dismiss. *Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 WL 239976, at *14 (D.N.J. Jan. 18, 2023) (citing *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 302 n.4 (D.N.J. 2019)). Accordingly, the Court will not consider any hostile work environment claim on this motion. *See Shears v. SCI Forest*, No. 21-246, 2022 WL 16744453, at *1 n.3 (W.D. Pa. Nov. 7, 2022) (declining to consider a claim added in plaintiff's responsive brief on a motion to dismiss).  In the interest of fairness, the Court will grant Plaintiff thirty (30) days to amend her pleading for the sole purpose of setting forth a hostile work environment claim, should she wish to do so. *Fado v. Kimber Mfg., Inc.*, No. 11-4772, 2016 WL 3912852, at *11 n.8 (D.N.J. July 18, 2016).

### III.    DISCUSSION

#### A.    Sex Discrimination

The analysis for Plaintiff's sex discrimination claims is the same under both Title VII and the NJLAD. *Martinez v. City of Union City*, No. 21-11111, 2021 WL 5195708, at *6 (D.N.J. Nov. 8, 2021) (citing *Tourtellote v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016)).  Under both statutes, Plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position at issue, (3) she suffered an adverse employment action, and (4) the adverse employment action gives rise to an inference of unlawful discrimination. *Id.* (citing *Tourtelotte*, 636 F. App'x at 842).  To survive a motion to dismiss for failure to state a claim, a Title VII discrimination complaint needs only to allege facts sufficient to "'raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (alteration in original) (quoting *Phillips*, 515 F.3d at 234).

Defendants only challenge the fourth element, arguing that Plaintiff fails to allege facts showing that her firing gives rise to an inference of unlawful discrimination.  Br. at 10–12. Plaintiff, however, has met her burden.  She alleges that (1) unlike with her male predecessor, Andreo questioned many of her decisions as Camp Director; (2) other male staff became difficult or distant when she began reporting to Andreo directly; (3) Andreo, his deputy Dugan, and other staff often ignored Plaintiff or defaulted to speaking to her male subordinate rather than her; (4) Andreo and Dugan largely disregarded her concern that female staff were being made to wear revealing shirts; (5) she was terminated and replaced by a male with less experience than her; and (6) Andreo did not answer Plaintiff when she asked whether she was being fired because she was a woman.  FAC ¶¶ 28, 31, 35–36, 38–42, 50–51, 53, 55.  Accepting these allegations as true, Plaintiff has pled facts sufficient to infer discriminatory intent in her firing. *See Bradley v. Just*

5

*Greens, LLC*, No. 19-7162, 2019 WL 4316773, at *4 (D.N.J. Sept. 12, 2019) (finding an inference of discrimination where plaintiff asserted that she, among other things, was excluded from management meetings, had her ideas rejected until they were appropriated by male employees, and was ultimately terminated in favor of a male replacement); *Baughman v. Marathon Petroleum Logistics Servs., LLC*, No. 24-287, 2025 WL 492003, at *4 (M.D. Pa. Feb. 13, 2025) (finding an inference of discrimination where plaintiff was terminated after "she was treated more poorly than male employees by" her supervisor and "other male colleagues," including by excluding her from meetings and criticizing her); *Sims v. Mercedes-Benz USA, LLC*, No. 16-9051, 2017 WL 3641743, at *5 (D.N.J. Aug. 24, 2017) (finding an inference of discrimination where a person belonging to a protected category was replaced by someone outside that category who was also less qualified for the position).

The authorities cited by Defendants do not compel a different conclusion. *See* Br. at 10–12. In many of these cases, the courts dismissed the claims because the complaint was devoid of any factual support for gender discrimination. *See Baig v. Nuclear Regul. Comm'n*, No. 10-842, 2011 WL 2214660, at *4 (D.N.J. June 6, 2011); *Marino v. Westfield Bd. of Educ.*, No. 16-361, 2016 WL 2901706, at *8 (D.N.J. May 18, 2016); *Taylor v. Wee Health Care Servs.*, No. 09-4034, 2010 WL 1050130, at *4 (D.N.J. Mar. 19, 2010); *Connoly v. Mitsui O.S.K. Lines (Am.), Inc.*, No. 04-5127, 2007 WL 4207836, at *7 (D.N.J. Nov. 21, 2007). As described above, Plaintiff here has asserted facts that, accepted as true, support an inference of gender discrimination. Additionally, *Badrinauth v. Metlife Corporation* is inapposite because plaintiff there alleged that his superior gave preferential treatment to a female employee because they were romantically involved. No. 04-2552, 2006 WL 288098, at *4 (D.N.J. Feb. 6, 2006). This theory has no application to the present case. Finally, the court's analysis of the facts under a summary judgment standard in

*Young v. Hobart West Group* is unhelpful because that standard does not govern this motion. *See* 897 A.2d 1063, 1068 (N.J. Super. Ct. App. Div. 2005). Accordingly, Defendants' motion to dismiss Plaintiff's gender discrimination claims under Title VII and the NJLAD is denied.

### B.    Retaliation

Plaintiff "does not contest Defendants' motion to dismiss her retaliation claim." Opp. at 2, 14. Therefore, the Court will grant Defendants' motion to dismiss Counts Three and Four. *See Natale v. East Coast Salon Servs., Inc.*, No. 13-1254, 2014 WL 4854442, at *1 (D.N.J. Sept. 30, 2014); *Med-Matrix, LLC v. Boyce*, No. 17-3400, 2017 WL 5162809, at *4 (D.N.J. Nov. 7, 2017).

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 19th day of August, 2025;

**ORDERED** that Defendants' motion to dismiss (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint for the sole purpose of setting forth a hostile work environment claim. Insofar as Plaintiff submits a further amended complaint, she shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**